**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
             :
TELCORDIA TECHNOLOGIES, INC.,  :
             :
  Plaintiff,        :
             :    Civil Action No. 09-2089 (JAG)
     v.       :
             :     **OPINION**
TELLABS, INC., et al.,     :
             :
  Defendants.      :
_____:

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion (Docket Entry No. 28) filed by

defendants, Tellabs, Inc, Tellabs Operations, Inc., and Tellabs North America, Inc. (collectively,

"Defendants"), seeking to transfer the complaint to the District of Delaware. Alternatively, if the

motion to transfer is denied, Defendants move to dismiss the claims against Tellabs, Inc. for lack

of personal jurisdiction. Plaintiff, Telecordia Technologies, Inc. ("Plaintiff"), opposes both

motions and cross-moves to obtain jurisdictional discovery regarding the motion to dismiss. For

the reasons set forth below, the motion to transfer will be granted. The remaining motions

regarding personal jurisdiction will be denied, as moot.

**Background**

On May 4, 2009, Plaintiff, a company incorporated under the laws of Delaware and

having its principal place of business in Piscataway, New Jersey, filed a complaint against

Tellabs, Inc., alleging infringement of three patents,[1] all of which concern various

---

[1] Telcordia had filed four prior cases seeking to enforce its rights to these same three patents. (Compl. ¶¶ 20, 33, 46).

communications technologies.[2]  On July 27, 2009, Plaintiff filed an amended complaint, alleging

infringement of the same three patents against Tellabs, Inc., Tellabs Operations, Inc., and Tellabs

North America, Inc.  All three defendants are corporations organized and existing under the laws

of Delaware, with principal places of business in Naperville, Illinois.  (Am. Compl. ¶¶ 5-7.)  On

September 1, 2009, each defendant filed an answer and counterclaims.

**Legal standard**

      In federal court, two statutes govern transfer of a case: 28 U.S.C. § 1404(a) and 28 U.S.C.

§ 1406.  "Section 1404(a) provides for the transfer of a case where both the original and the

requested venue are proper. Section 1406, on the other hand, applies where the original venue is

improper and provides for either transfer or dismissal of the case."  Jumara v. State Farm Ins.

Co., 55 F.3d 873, 878 (3d Cir. 1995).

      Here, Defendants move to transfer, pursuant to 28 U.S.C. § 1404(a), which provides that

"[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought."

"[T]he district court is vested with a large discretion" regarding the decision to transfer.

Solomon v.  Continental Am. Life Insurance Co., 472 F.2d 1043, 1045 (3d Cir.).  In exercising

such discretion, the Third Circuit has provided a list of both private and public factors which

district courts should consider in evaluating requests to transfer.

      "The private interests have included: plaintiff's forum preference as manifested in the

original choice; the defendant's preference; whether the claim arose elsewhere; the convenience

---

    [2]  The three patents are: (1) the '306 patent, entitled "Method and Apparatus for
Multiplexing Circuit and Packet Traffic" (Compl. ¶ 12); (2) the '763 patent, entitled "Survivable
Ring Network" (Compl. ¶ 25); and (3) the '633 patent, entitled "Synchronous Residual Time
Stamp for Timing Recovery in a Broadband Network" (Compl. ¶ 38).

of the parties as indicated by their relative physical and financial condition; the convenience of

the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one

of the fora; and the location of books and records (similarly limited to the extent that the files

could not be produced in the alternative forum)." Jumara, 55 F.3d at 879 (internal citations

omitted).

"The public interests have included: the enforceability of the judgment; practical

considerations that could make the trial easy, expeditious, or inexpensive; the relative

administrative difficulty in the two fora resulting from court congestion; the local interest in

deciding local controversies at home; the public policies of the fora; and the familiarity of the

trial judge with the applicable state law in diversity cases." Id. at 879-80.

## Analysis

Defendants argue primarily that judicial economy favors transfer to Delaware, since

"Telcordia has spent the past eleven years litigating the patents in suit in the District of Delaware

and transfer to Delaware will obviate a personal jurisdiction problem that exists in this District."

(Defs.' Mem. of Law in Support of Mot. to Transfer this Action to the District of Delaware

Pursuant to 28 U.S.C. § 1404(a), or in the Alternative to Dismiss Tellabs, Inc. for Lack of

Personal Jurisdiction [hereinafter "Defs.' Mem. of Law"] 14.)  In addition, Defendants claim that

practical considerations, such as familiarity of all parties' Delaware counsel with the patents, the

prior production of all relevant documents and records in Delaware litigation, and the interest in

maintaining related litigation in only one district, all favor transfer to Delaware.  (Id. at 21-26.)

Plaintiff responds that, "[g]iven the proximity of the two courts, traditional factors such

as the location of documents and witness convenience do not favor one court over the other.  The

controlling factors concern Telcordia's choice of forum and judicial economy."  (Telcordia's

3

Mem. of Law in Opp'n to Tellabs's Mot. to Transfer or Mot. to Dismiss and Telcordia's Cross

Mot. for Jurisdictional Discovery Concerning Tellabs, Inc. [hereinafter "Pl.'s Mem. of Law"]

11.)  As to the issue of Plaintiff's choice of forum, Plaintiff simply states that this Court should

recognize the right of New Jersey residents to bring suit in New Jersey.  (Id. at 18.)

      With regard to the question of judicial economy, Plaintiff "acknowledges that when

bringing a subsequent law suit for patent infringement after litigating in one forum, it is not

unreasonable to consider bringing the subsequent suit in the same court on the assumption that

judicial resources will be conserved by that court's familiarity with the issues."  (Id. at 12.)

However, Plaintiff believes that this presumption is overcome by the fact that the Delaware court

is overburdened, and consequently has "extended litigation schedules."  (Id. at 13.)  Plaintiff

encourages this Court to "give significant weight to docket congestion" in reaching its decision

on the motion to transfer.  (Id.)  Plaintiff also argues that little work will be left for this, or any

other court, since issues of claim construction have already been resolved; that remand of a

related case from the Federal Circuit to Delaware will not impact judicial economy since the

remanded case will only involve one of the three patents at issue here; and that the adoption of

Local Patent Rules in the District of New Jersey will create additional efficiencies.

      This Court recognizes that "[t]he burden of establishing the need for transfer still rests

with the movant," and that "in ruling on defendants' motion the plaintiff's choice of venue

should not be lightly disturbed."  Jumara, 55 F.3d at 879.  However, Plaintiff's argument in

support of its decision to bring this action in New Jersey is not compelling.[3]  In fact, Plaintiff all

---

[3]  Plaintiff asserts that its "choice of forum now outweighs the traditional benefits to judicial economies that come from familiarity with the patents from prior litigation."  (Pl.'s Mem. of Law 2.)  In support of this bald statement, Plaintiff simply relies upon the fact that New Jersey is Plaintiff's "home forum."  (Id. at 11.)  Further, Plaintiff argues that "substantial weight should be given to the [sic] Telcordia's choice of forum because Tellabs does not contend that

but acknowledges that Delaware would have been its preferred venue, but for Plaintiff's

perception that the court there has "extended litigation schedules."

Here, as is often the case, perception and reality do not coincide.  In 2008, the weighted

filings[4] per judgeship in the District of Delaware number 443, while in the District of New

Jersey, they number 511.  (Judicial Caseload Statistical Tables, attached as Ex. O to Decl. of

Amanda Hollis [hereinafter, "Ex. O"].)  In fact, in five of the past six years, the weighted

---

the Delaware court is more convenient."  (Id.)  This argument misses the point that all of the
factors enumerated by the Third Circuit must be considered and weighed by this Court in
reaching its decision on whether or not to transfer this, or any other, case.  Convenience of the
parties and witnesses is simply one factor, which, as discussed further below, is neutral in this
case.

[4]  The Administrative Office of the United States Courts explains the meaning of the term
"weighted filings" as follows:

> Weighted filings statistics account for the different amounts of time district judges
> require to resolve various types of civil and criminal actions. The federal Judiciary
> has employed techniques for assigning weights to cases since 1946. In 2004, the
> Judicial Resources Committee of the Judicial Conference of the United States
> approved a civil and criminal case weighting system proposed by the Federal
> Judicial Center. On a national basis, weighted filings did not change significantly
> after the implementation of the new case weights. More than two-thirds of all
> district courts saw their weighted filings change by 10 percent or less. Average
> civil cases or criminal defendants each receive a weight of approximately 1.0; for
> more time-consuming cases, higher weights are assessed (e.g., a death-penalty
> habeas corpus case is assigned a weight of 12.89); and cases demanding relatively
> little time from judges receive lower weights (e.g., a defaulted student loan case is
> assigned a weight of 0.031). Probation revocation hearings (both evidentiary and
> non-evidentiary) are included as part of the weighted filings statistics. For
> comparative analysis in this report, the totals for weighted civil and criminal
> filings for prior years have been revised based on the new case weighting system.
> The weighted totals for criminal defendants include reopenings and transfers. Data
> on civil cases arising by reopening, remand, and transfer to the district by order of
> the Judicial Panel on Multidistrict Litigation are not included among the totals for
> weighted filings.

Administrative Office of the United States Courts, Case Management Statistics, Explanation of
Selected Terms, http://www.uscourts.gov/library/fcmstat/cmsexpl08.pdf.

caseload has been lower in Delaware than in New Jersey.[5]  Additionally, the time, in months,

from filing to trial for civil cases in Delaware was 25 in 2008, while in New Jersey, it took 38.5

months from filing for a case to reach trial.  (Id.)  Delaware's case processing time was not only

faster than New Jersey's in 2008.  Since 2003, Delaware's time from filing to trial has been

shorter than that in New Jersey.[6]

In light of these facts, Plaintiff's concerns about the excessive caseload, and associated

------

[5]  The weighted caseloads for the past six years are:

| Year | Delaware | New Jersey |
|------|----------|------------|
| 2008 | 443 | 511 |
| 2007 | 379 | 496 |
| 2006 | 367 | 481 |
| 2005 | 422 | 493 |
| 2004 | 534 | 500 |
| 2003 | 424 | 486 |

(Ex. O.)

[6] The time, in months, from filing to trial for the past six years are:

| Year | Delaware | New Jersey |
|------|----------|------------|
| 2008 | 25 | 38.5 |
| 2007 | 27 | 36 |
| 2006 | 26 | 33 |
| 2005 | 23.5 | 36.7 |
| 2004 | 26 | 33.4 |
| 2003 | 24 | 33.8 |

(Ex. O.)

delays, in Delaware are without merit.

Plaintiff also asserts that the Delaware court's experience with the patents involved in this case will not create any additional efficiencies since Chief Judge Gregory Sleet has already resolved all issues of claim construction, thus leaving only issues of fact to be resolved in any subsequent proceedings. However, the Federal Circuit has observed that "in a case such as this in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues." Regents of the Univ. of California v. Eli Lilly and Co., 119 F.3d 1559, 1565 (Fed. Cir. 1997). Therefore, considering the eleven years of experience that the Delaware court, and specifically Chief Judge Sleet, has with the patents and associated technical issues involved in this case, this Court concludes that efficiencies will exist in the management of the case in Delaware. Therefore, this fact weighs in favor of transferring the case to Delaware.

Plaintiff argues that the Local Patent Rules recently adopted by the District of New Jersey will create greater case management efficiencies here in New Jersey. Assuming, for the sake of argument, that the new Local Rules will create greater efficiencies in the management of the case in New Jersey than previously existed, those efficiencies do not outweigh the fact that Delaware's caseload is significantly less than that in New Jersey and that the Delaware court has a long-standing familiarity with the patents at issue in this case. Therefore, adoption of the Local Patent Rules in New Jersey does not outweigh the judicial efficiencies that exist in Delaware.

Additionally, if the case were to remain here in New Jersey, Plaintiff has requested discovery in order to demonstrate this Court's personal jurisdiction over Tellabs, Inc. If the case is transferred to Delaware, the question of personal jurisdiction disappears, and the added burden of litigating this issue, both as to finances and time, is eliminated. As another judge in this

7

District has observed, "[t]ransfer will accordingly strike a constructive blow in support of the need to eliminate avoidable discovery, and aid in the inexpensive determination of the action, Rule 1, F.R.Civ.P., since it will render moot the dispute over [personal jurisdiction]." X-Rail Systems, Inc. v. Norfolk & Western Railway Co., 485 F. Supp. 553, 555 (D.N.J. 1980).

Balancing the private and public interests enumerated by the Third Circuit against Plaintiff's choice of venue, this Court concludes that the public interests, which favor transferring this case to Delaware, outweigh Plaintiff's choice of New Jersey. The private interests, such as the convenience of the parties, the convenience of the witnesses, and the location of the books and records, are all neutral in light of the physical proximity of the two districts. As to Plaintiff's forum preference, in this Court's view, Plaintiff has neither expressed a strong preference for pursuing this action in New Jersey, nor provided any other reason for this case remaining in New Jersey. On the other hand, Defendants have expressed a strong preference for pursing this action in Delaware.

In contrast to the essential neutrality of the private interests, some of the public interests[7] weigh strongly in favor of transferring this case to Delaware. That is, the question of court congestion weighs in favor of Delaware. Similarly, Delaware's familiarity with the patents at issue in this case weighs in favor of transferring the case to Delaware. Additionally, the need to extend the litigation here in New Jersey by resolving the issue of personal jurisdiction will delay the case and add to the expense. This factor weighs in favor of transfer.

---

[7] The remaining public interests, such as enforceability of the judgment, the interest in deciding local controversies at home, the public policies of the two fora, and the familiarity of the judges with state law issues, are either neutral or not relevant to this case.

**Conclusion**

This Court will grant Defendants' motion to transfer the case to Delaware.  In light of the change of venue, this Court will deny, as moot, Defendants' motion to dismiss Tellabs, Inc. for lack of personal jurisdiction and Plaintiff's cross-motion for discovery.

Dated: December 15, 2009

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.